**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LILIAN ALESSA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No.:  20-1320 (ABJ) |
| | ) |
| KENNETH BRAITHWAITE, | ) |
| Acting Secretary of the Navy | ) |
| DEPARTMENT OF NAVY, | ) |
| | ) |
| And | ) |
| | ) |
| TODD R. BOONE,[1] | ) |
| | ) |
| And | ) |
| | ) |
| EDWARD A. WESTFALL, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS,
TRANSFER VENUE, AND EXTENSION OF TIME**

Plaintiff Dr. Lilian Alessa ("Dr. Alessa"), by and through undersigned counsel,

respectfully submits her opposition to the Defendants motion to dismiss the tort claims, transfer

the remaining claims to the District of Maryland and extend their time to Answer, and requests

the Court deny all the relief requested by Defendant, in support thereof states as follows:

**BACKGROUND**

Plaintiff brought this action to remedy the severe damages she has suffered due to the

defendants repeated and egregious discrimination, harassment and defamation which severely

---

[1] Plaintiff asserts that both Defendant Todd R. Boone and Edward A. Westfall are in default for
failure to file a timely responsive pleading.

hampered Plaintiff's livelihood. Dr. Alessa is a tenured professor and national security expert who, through the University of Idaho, entered an agreement with the Navy under the Intergovernmental Personnel Act ("IPA") which granted her all of the rights of a federal employee. Compl. ¶¶ 35, 48-52. Dr. Alessa intended to offer her expertise in Resilience Science and Systems Science to support the Navy and the national intelligence community at large with a Big Data Advanced Analytics program she had helped to develop. *Id.* at ¶¶ 2, 34, 40-42. Much to her dismay, when she began her post with the Navy she was immediately hampered by sexist and religious based discrimination from supervisors who impeded her chain of command. *Id.* at ¶¶ 61-66.

After appropriately raising her concerns within the Agency, rather than addressing the harassment the Navy instructed her to continue reporting to her harasser, Mr. Boone, who was never supposed to be her supervisor pursuant to the terms of the IPA. Compl. ¶¶ 80-82. Ultimately the Navy terminated her and the IPA in further retaliation for her continuing to raise concerns and filing an EEO complaint. *Id.* at ¶¶ 102, 113. To further throw salt in the wound, Defendants Boone and Westfall embarked on a smear campaign spreading vicious lies about Dr. Alessa throughout the community including alleging an extra-marital affair, that her security clearance had been revoked, that she was terminated for cause and that she had misrepresented her credentials and experience. *Id.* at ¶¶ 122, 127, 139. None of these statements were true, and Defendants Boone and Westfall knew they were materially false when they uttered them.  Mr. Boone and CAPT Westfall intended to ruin Dr. Alessa's reputation in the intelligence community so that she could not take her Big Data Analytics program to another federal government agency.

## <u>ARGUMENT</u>

## I.    **Venue is Proper in this District**

Plaintiffs defamation claims certainly took place within the District Columbia and would

give rise to venue in this district.  Setting those aside for the time being, the Navy also

misconstrues the venue provisions of Title VII.  The Navy correctly identified the four

provisions under which venue arises pursuant 42 U.S.C. § 2000e-5(f)(3), as follows:

- in *any judicial district in the state* where the unlawful employment practice is alleged to
  have been committed;
- in the judicial district where the employment records relevant to the alleged unlawful
  practice are maintained and administered;
- in the judicial district where the aggrieved person would have worked but for the alleged
  unlawful employment practice;
- but if the respondent is not found within any such district, such an action may be brought
  within the judicial district in which the respondent has his principal office. *See*, 42 U.S.C.
  § 2000e-5(f)(3) (emphasis added).

Courts have routinely held that Plaintiff need only meet one of the four provisions in order to

establish venue in the district.  Contrary to Defendants assertions the unlawful employment

practices were committed within the District of Columbia.  Defendants admit that Plaintiff

performed work under the IPA within the District of Columbia.  Defendants misapply the third

provision in their assertion that Dr. Alessa would have continued to work at Suitland but for the

alleged unlawful employment practice.  First, that provision is directed toward—and routinely

interpreted to apply to—instances where an employee was terminated and therefore at the time of

the suit is no longer employed within the same district. *See Zughni v. Pena*, 851 F. Supp. 300,

302-03 (N.D. Ill. 1994).  Second, and more importantly, defendants fail to recognize that even

prior to Dr. Alessa's request for reassignment to office space in D.C. she was routinely

performing work under the IPA in D.C., including at DHS offices and other federal government

locations. In addition, as pointed out by the defendant, Dr. Alessa regularly teleworked both from

Idaho and elsewhere, including the District of Columbia.

At best venue would lie in both the District of Columbia and Maryland.  The Navy is

located within the District of Columbia and cannot claim that it is an inconvenient forum. Given

that venue is permissible, and Plaintiff has met the first provision of Title VII's exclusive venue provision, this Court should retain jurisdiction and deny Defendants motion to transfer.

## II.    The Court Cannot Both Dismiss Claims and Transfer the Action

Defendant takes disparate positions, which alone may permit this Court to deny defendants motion to dismiss the tort claims. In the first instance Defendant asserts that this is an improper venue yet requests this Court to dismiss Plaintiffs tort claims.  Both theories cannot lie. Accordingly, in order for this Court to take up the issues raised in Defendants motion to dismiss, it must first retain jurisdiction.

In addition, the U.S. Attorney's Office explicitly withdrew its representation of Mr. Boone and CAPT Westfall (*See* Dkt. #5), yet they seek to dismiss claims as to those defendants. It is axiomatic that counsel cannot move the Court on behalf of a party they do not represent. *Jones v. Espy*, 1994 WL 318284, *1 (D.D.C. 1994).  For each of the above reasons we urge the Court to deny Defendants motion to dismiss the tort claims.

## III.    The Individual Defendants Were Not Acting Within the Scope of Their Employment and the Government Should Not be Substituted

The Department of the Navy invites this Court to find that lying and defaming a person by contending—without the slightest proof—that a professional woman, is having an extra-marital affair, are within the scope of employment for its supervisory employees. This Court should decline the invitation.

CAPT Westfall and Mr. Boone made false and defamatory statements regarding Dr. Alessa's relationship with a colleague, alleging an extra-marital affair, alleging her security clearance was revoked, and disparaging her performance and demeanor. None of these statements were true, none of them were opinion, and none of them were made on behalf of the Department of the Navy.  Further, none of them had the slightest thing to do with employment.

Neither CAPT Westfall nor Mr. Boone were contractually designated as supervisory personnel[2] over Dr. Alessa, nor were their statements made to investigators or alleged in any formal workplace complaint. Instead, the defamation was designed to impugn Dr. Alessa's overall integrity and credibility because Dr. Alessa had complained about the discriminatory treatment inflicted by both men. The defamatory statements were not part and parcel of any employment-based claim or duty. They were simply aspersions cast by two men who wanted to malign Dr. Alessa and denigrate her as a woman by alleging sexual misconduct. CAPT Westfall and Mr. Boone made these statements in their own self-interest and in an effort to protect themselves from discipline from the Agency. This Court should ignore an effort to bring such a personal and vicious act into the protection afforded federal personnel, carrying out their employment duties.

Assuming, *arguendo* that this Court has jurisdiction and is the proper venue to rule on Defendants motion to dismiss, Plaintiffs assert that Defendant has misapplied the scope of employment analysis and their motion should be denied. Plaintiff challenges the scope certification issued by the US Attorney's Office with respect to Mr. Boone and CAPT Westfall's defamatory statements being within the scope of their employment. Despite the certification serving as prima facie evidence,[3] Plaintiff's allegations and factual assertions set forth below rebut that presumption and the Court should deny the certification, or in the alternative grant Plaintiff discovery to address the issue.

---

[2] Compl. ¶ 58, Ex. 1, pg. 2, box 16 and 18 (Dkt. #1-2).
[3] Counsel for the Defendant has repeatedly stated that the mere certification by the government that an employee acted within the scope of their employment, is dispositive. That ignores the power and duty of this Court to ensure the designation is not abused to provide protections where none are warranted. The Court, not the USAO determines the issue. *Smith v. Clinton*, 253 F.Supp.3d 222, 234 (D.D.C. 2017) (*quoting Stokes v. Cross*, 327 F.3d 1210, 1213 (D.C. Cir. 2003) ("a district court should not treat a Westfall Act certification as conclusive evidence, and a plaintiff may challenge 'the government's scope of employment determination.'")

Plaintiff agrees that D.C. law should apply to the analysis of whether the defendants were acting within the scope of their employment. Notably, while the Navy argues that Maryland is the appropriate venue, they choose to apply D.C. law to the analysis of the scope of employment. The Navy reaches that conclusion by accepting Plaintiff's venue allegations from the Complaint. See, Def. Mot., pg. 4, citing Compl. ¶ 23.[4] In reviewing the four-factor test to determine the scope of employment, as set forth by the Restatement (Second) of Agency § 228(1), Mr. Boone and CAPT Westfall's actions fail to meet factors one and three.

In looking at whether Mr. Boone and CAPT Westfall's materially false statements were within the scope of their employment it is imperative to understand the timing, nature, and scope of when the statements were made. Dr. Alessa's IPA with the Navy was terminated effective May 15, 2019. Compl. ¶ 115. The majority of the defamatory statements made by Mr. Boone and CAPT Westfall were made after her termination, beginning in June and stretching into the fall, as late as November 2019. *Id.* ¶ 139. The defamatory statements have been repeated to contractors and to persons in federal law enforcement. *See*, Exhibit 1. They were repeated well *after* Dr. Alessa left federal employment.[5]

In one of the more egregious instances, CAPT Westfall made unsolicited false statements at a National Intelligence Manager (NIM) meeting to personnel from other federal agencies

---

[4] Plaintiff alleges that the defamatory statements were made by Mr. Boone and CAPT Westfall in Washington D.C., Virginia, California, and Alaska, as well as abroad. While we could appropriately analyze the defendants actions under the *respondeat superior* doctrine of each jurisdiction, we agree that D.C. law is proper to apply in this instance.

[5] As noted, the persons making the defamatory statements did not report the conduct as part of any government sponsored investigation. Perhaps, in a post-hoc attempt to try to establish a legitimate basis for such statement, investigators for the Department of Homeland Security, questioned Sean Moon, the alleged paramour of Dr. Alessa in the past two weeks! The investigation is clearly troubling and retaliatory and suggests possible intimidation of a potential witness. One hopes that no federal attorney or the actors of the Department of the Navy were involved in or green lighted such misuse of federal authority.

outside the Navy.  Importantly, neither Dr. Alessa, nor the BDAADS program were on the agenda for the meeting and no one asked CAPT Westfall for information regarding Dr. Alessa. Rather, he falsely told the participants, with knowledge that his statements were materially false—that Dr. Alessa had been terminated for cause, that her security clearance was revoked and that she had misrepresented her qualifications and credentials.  His statements were directed to Mr. Michael Potts and Mr. Christopher Demi from the United States Coast Guard Intelligence division (CG-2); Brian Murphy, Department of Homeland Security Office of Intelligence and Analysis (DHS I&A); Michael Schimoff, Office of the Director of National Intelligence, National Intelligence Manager, Transnational Crime, Homeland, & Western Hemisphere (ODNI NIM-THW), Nicole Wells (ODNI NIM-THW, now with the National Counter Terrorism Center, NCTC), and Richard Koppel (NIM THW/ODNI and I&A/DHS). Compl. ¶ 127. None of these individuals were investigators or supervisors of Dr. Alessa, and thus the disclosures were not designed to advance a government interest, but, solely to discredit Dr. Alessa. The tactic of accusing a woman of adultery, to explain support that she received from others for her claims, and the threat to her reputation through aspersions on her sexual conduct, is an all too familiar attack that has no place in federal employment. Indeed, the conduct forms the separate claim of illegal discrimination and retaliation.  As such, it is hard to conceptualize the issue as involving something within the scope of employment.

It is not foreseeable that a supervisor with the Navy, such as CAPT Westfall would be discussing the status of, or basis, for a terminated employee outside his own Agency or accusing that employee of being an adulterer or security risk.  More importantly, discussing the status of or basis for an employee termination is in complete contravention of the "type of conduct [CAPT Westfall] was employed to perform." *Smith v. Clinton*, 253 F.Supp.3d 222, 235 (D.D.C. 2017),

citing *Ballenger*.  In fact, upon information and belief, offering unsolicited false statements regarding a terminated employee, to other agencies is a violation of the Navy's personnel regulations.  Rather a supervisor would not be expected to discuss the status of a terminated employee at all, and certainly not unsolicited.

The clear import of the actions of both Mr. Boone and CAPT Westfall were self-interested.  They were concerned, not about the Navy's interests, but rather about saving their own interests to prevent potential discipline from the Navy. This undercuts the Defendants argument that Mr. Boone and CAPT Westfall's "motivation had at least some motivation to serve the employer."  In no way does making false allegations about a terminated employee serve the interests of the employer.  Rather Mr. Boone's and CAPT Westfall's false statements were made in their own self interest in an ill-advised attempt to shield themselves and justify their own actions, all while preventing Dr. Alessa from obtaining a new sponsoring agency for her funded program.

Notwithstanding, CAPT Westfall continued to make false statements to other agencies and partners within the intelligence community through the fall and as late as November 2019. CAPT Westfall made similar false statements to representatives of the Port of Long Beach, as well as representatives of the Canadian Department of National Defence ("Canada DND").  His statements to the Canada DND were made during meetings held in both Australia and Canada and again, upon information and belief were unsolicited by the other participants. It is difficult to foresee how an employee who was terminated six months prior would come up on a meeting agenda with foreign intelligence agencies.  The Navy cannot reasonably assert that CAPT Westfall making unsolicited false statements to foreign intelligence agencies six months after Dr. Alessa's termination is the "'kind' of conduct an agency employee is employed to perform." Def.

Motion, pg. 6, referring to *Ballenger*.

Accordingly, the Plaintiff has sufficiently rebutted the government's scope certification with the above allegations as well as those in her Complaint, and the government has failed to meet the four-factor test from the Restatement (Second) of Agency. Therefore, the Court should deny the governments Westfall certification and should deny substitution of the United States for the individual defendants.

Moreover, in denying the substitution of defendants the Court need not take up an analysis of the Federal Tort Claims Act as set forth by the Defendants, because the tort defendants for the defamation claims are properly Mr. Boone and CAPT Westfall individually. To the extent the Court is inclined to substitute the government defendant for the individual defendants, then Plaintiff should be permitted an opportunity to timely bring her tort claims directly to the Agency pursuant to 28 U.S.C. § 2679(d)(5).

**IV.  Defendant has had ample time to Answer Plaintiff's Complaint.**

Defendant has already been permitted more than sufficient time to address the allegations raised by Plaintiff and should not be permitted to draw out this litigation any further. The Government was already permitted sixty (60) days to respond to Plaintiff's complaint after service was perfected.  Moreover, by the mere effort of filing the motion the government has bought itself additional time.  The Court should Order the Defendant to Answer Plaintiff's Complaint within ten (10) days and not delay Plaintiff access to the justice system any further. Notably, the Defendant requested additional time to "Answer" and should be precluded from filing any other motions attacking the Plaintiff's pleading on procedural grounds.

<u>**CONCLUSION**</u>

Accordingly, for the reasons as set forth above Plaintiff respectfully requests the Court

deny each of Defendants motion to dismiss the tort claims, transfer venue, and extend time, and

Order the Defendants to promptly Answer the Complaint in full, and any other relief the Court

deems appropriate.

## **REQUEST FOR ORAL ARGUMENT**

      Plaintiff respectfully requests oral argument on Defendants motions.


Dated: September 3, 2020                              Respectfully submitted,


                                 DR. LILIAN ALESSA
                                 By Counsel

                                 Kevin E. Byrnes, D.C. Bar No. 480195
                                 Samuel M. Adelmann, D.C. Bar No. VA067
                                 FH+H, PLLC
                                 1751 Pinnacle Drive, Suite 1000
                                 Tysons, VA 22102
                                 T: 703.590.1234
                                 F: 703.590.0366
                                 kbyrnes@fhhfirm.com
                                 sadelmann@fhhfirm.com
                                 E-File@fhhfirm.com
                                 *Counsel for Plaintiff*

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on September 3, 2020, I served the foregoing through the CM/ECF system and by electronic mail to the following:

Alan Burch, Esq.
Assistant United States Attorneys
United States Attorney's Office, Civil Division
555 Fourth St., NW
Washington, DC 20530
Ph: 202-252-2550
Alan.Burch@usdoj.gov
*Counsel for Defendants Kenneth Braithwaite and James E. McPherson*

and Via U.S. First-Class Mail to:

Todd R. Boone
8427 Reformatory Way
Lorton, VA 22079-4323
*Defendant*

Edward A. Westfall
3133 Connecticut Avenue NW, #832
Washington, DC 20008
*Defendant*

Kevin E. Byrnes, D.C. Bar No. 480195