IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LILIAN ALESSA )<br>)<br>    Plaintiff )<br>)<br>)   Case No.: 8:21-cv-00924-DLB<br>v. )<br>)<br>CARLOS DEL TORO, )   Date:    October 13, 2021<br>Secretary of the Navy, *et. al.*, )<br>)<br>    Defendants. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS DEFAMATION CLAIMS**

**COMES NOW**, Plaintiff Dr. Lilian Alessa ("**Plaintiff**" or "**Dr. Alessa**"), by and through counsel, and pursuant to the Court's Order issued on August 10, 2021, and respectfully opposes the Motion to Dismiss Defamation Claims (ECF No. 33) filed by Defendants, Secretary Carlos Del Toro ("**Secretary Del Toro**"), Todd R. Boone ("**Boone**") and Edward A. Westfall ("**Westfall**")[1] (collectively, "**Defendants**"), and in support thereof states as follows:

**I.    BACKGROUND**

Plaintiff brought this action to remedy the severe damages she has suffered due to the Defendants' repeated and egregious discrimination, harassment and defamation which severely hampered Plaintiff's livelihood. Dr. Alessa is a tenured professor and national security expert who, through the University of Idaho, entered into an agreement with the Navy under the Intergovernmental Personnel Act ("**IPA**") which granted her many of the rights of a federal

---

[1] Plaintiff maintains that Defendant Boone and Defendant Westfall are in default as both were properly served personally and are named in their individual capacity. Neither Defendant Boone or Defendant Westfall have filed any responsive pleading, and the U.S. Attorney in D.C. specifically filed a notice of withdrawal as to them individually.  Notwithstanding, and without waiving any assertions as to service and default, Plaintiff responds to the arguments set forth by the Navy herein.

1

employee. Compl. ¶¶ 35, 48-52. Dr. Alessa intended to offer her expertise in resilience science and systems science to support the Navy and the national intelligence community at large with a Big Data Advanced Analytics program ("**BDAADS**") she had helped to develop. *Id.* at ¶¶ 2, 34, 40-42. Much to her dismay, when she began her post with the Navy she was immediately hampered by sexist and religious based discrimination from supervisors who impeded her chain of command. *Id.* at ¶¶ 61-66.

After appropriately raising her concerns within the Agency, rather than addressing the harassment, the Navy instructed her to continue reporting to her harasser, Mr. Boone, who was never supposed to be her supervisor pursuant to the terms of the IPA. Compl. ¶¶ 80-82. Ultimately, the Navy terminated Dr. Alessa and the IPA in further retaliation for her continuing to raise concerns and filing of an EEO complaint. *Id.* at ¶¶ 102, 113. To further rub salt in the wound, Defendants Boone and Westfall embarked on a smear campaign by spreading vicious lies about Dr. Alessa throughout the community, including alleging that she engaged in an extra-marital affair, that her security clearance had been revoked, that she was terminated for cause and that she had misrepresented her credentials and experience. *Id.* at ¶¶ 122, 127, 139. None of these statements were true, and Defendants Boone and Westfall knew they were materially false when they uttered them. Mr. Boone and CAPT Westfall intended to ruin Dr. Alessa's reputation in the intelligence community so that she could not take her BDAADS to another federal government agency.

II.    **ARGUMENT**

    a. **Dr. Alessa's Tort Claims Are Not Preempted By The CSRA Because She Was Not A Covered Federal Employee.**

The Civil Service Reform Act ("**CSRA**") "established a comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S.

439, 455, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). However, this system only applies to covered employees within the definitions of the CRSA. *Eglin v. Dep't of the Treasury*, 567 U.S. 1, 6, 132 S.Ct. 2126, 2131 (2012). The "availability of administrative and judicial review under the CSRA generally turns on the type of civil service employee and adverse employment action at issue." *Id.*

As relevant in the present case, the CRSA defines a covered employee as an individual in the excepted service who "(i) is not serving a probationary or trial period under an initial appointment pending conversion to the competitive service; or (ii) who has completed 2 years of current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to 2 years or less." 5 U.S.C. § 7511 (a)(1)(C).

Plaintiff clearly falls within the exception under subsection (ii), and thus is not bound by the restrictions of the CRSA. Plaintiff was hired outside of the traditional competitive civil service process for a highly specialized role, making her an excepted federal employee within the Department of Defense. Given that Plaintiff was initially hired by the Department of the Navy in June 2018 and terminated in May 2019, she falls short of the requisite two-year period for CSRA coverage. Compl. ¶¶ 3, 34. As Plaintiff is not a covered employee under the definition of the CRSA, her claims are appropriate in district court.

Further, Plaintiff was employed under the IPA as an intentionally temporary employee. Compl. ¶¶ 14, 34. Although the IPA grants participating employees the full rights and benefits of a federal employee[2] with similar status, the language of the IPA does not indicate that any exception should be made when the IPA employee in question does not meet the qualification requirements of a federal program, such as the CSRA. 5 U.S.C. § 3372 (e)(2). There is no reading

---

[2] Accordingly, Dr. Alessa was eligible to, and appropriately asserted her rights through, the EEO process on the basis of discrimination under Title VII. Her rights under the EEO process and Title VII flow from the IPA and are broader than the constraints to tort claims under the CSRA.

3

of the IPA that would subject Plaintiff to the administrative remedies of the CSRA since she does not meet the two-year employment requirement. There is also no relevancy to the cases referenced by the Navy in its Motion to Dismiss because Plaintiff is not subject to the CSRA.

### b. Defendants Boone And Westfall Are Not Entitled To Sovereign Immunity To Dr. Alessa's Defamation Claims.

Defendants Boone and Westfall assert that the Complaint should be dismissed because this Court cannot exercise subject matter jurisdiction over the present matter since Defendants enjoy sovereign immunity with respect to Dr. Alessa's defamation claims, originating from the parties' work location. Defendants Boone and Westfall also claim that they are not the proper defendants for such defamation claims, and that the United States Government is instead the proper defendant. The individual defendants, Mr. Boone and CAPT Westfall, cannot circumvent liability by conveniently claiming that any and all acts they committed whenever employed by the U.S. Government were done within the scope of employment, and therefore, not ascribing personal liability.

The legal standard to determine whether an employee's actions fall within the scope of employment is governed by the *respondeat superior* rules of the state in which the wrongful act occurred. *See Johnson v. Carter*, 983 F.2d 1316, 1322 (4th Cir. 1993); *Stewart v. U.S.*, 2014 WL 1032017, at *2 (D. Md. 2014). Here, the Defendants' conduct, whether within the District of Columbia or Maryland, was outside the scope of employment.[3] The plaintiff must prove by a preponderance of the evidence that the employee was acting beyond the scope of employment. *See*

---

[3] The postal address for NMIO is Department of the Navy, 4251 Suitland Road, Washington, D.C. However, the offices are physically located in Suitland, Maryland, which was the basis of the government's prior motion to transfer venue. Notwithstanding, Dr. Alessa did perform certain duties under the IPA from a separate office in Washington, D.C. at a DHS building, and some of the defamatory statements made by the Defendants are believed to have been made in Washington, D.C. Accordingly, Plaintiff has provided the analysis under both Maryland and D.C. law, which for these purposes in deciphering *respondeat superior*, do not differ in a meaningful way.

*Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1153 (4th Cir. 1997); *see also Koch v. United States*, 209 F.Supp.2d 89, 92 (D.D.C. 2002) The scope of employment elements is similarly situated in both D.C. and Maryland; each are locations from which the conduct originated.

In each jurisdiction, an act is within the scope of employment only if: [1] it is of the kind the employee is employed to perform; [2] it occurs substantially within the authorized time and space limits; and [3] it is actuated, at least in part, by a purpose to serve the master. *See Haddon v. U.S.*, 68 F.3d 1420, 1424 (D.C. Cir. 1995)[4] (quoting Restatement (Second) of Agency § 228 (1957)) (distinguished on other grounds); *see also Dhanraj v. Potomac Electric Power Co.*, 62 Md. App. 94, 98 (1985) (stating "[T]o be within the scope of employment, the conduct of the employee must be of a kind the actor is employed to perform, occur during a period not unreasonably disconnected from the authorized period of employment, in a locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the master"), aff'd, 305 Md. 623 (1986) (citation omitted). *See generally Felland Ltd. Partnership v. Digi-Tel Communications, LLC*, 384 Md. 520, 532 (2004).

Defendants Boone and Westfall also assert that because they secured Westfall Act certification on July 6, 2020, they conclusively acted within the scope of their employment at the time the incidents occurred. However, Defendants fail to understand or acknowledge that the certification secured does not decisively remove their liability and automatically convert the lawsuit into an action against the Government under the Federal Tort Claims Act ("**FTCA**"). Instead, the federal court may determine independently whether the employee acted within the

---

[4] D.C. also employs a fourth element, when applicable, of intentional force when such force is not unexpected by the employer. That element is not applicable to the facts presented, and nor is that element presented under Maryland law. Thus, it is not further discussed here.

scope of his employment and whether to substitute the Government as the proper defendant. 28 U.S.C.A. § 2679(b)(1), (d)(2). The Defense wholly ignores the Court's discretion on this matter and Dr. Alessa's recourse to address a disputed certification. See also Section C(ii) *infra*. Accordingly, there is no sovereign immunity afforded to Defendants Boone and Westfall because they were acting outside the scope of their employment and are the proper individual defendants, not the Government.

### i. Boone And Westfall *Are* The Proper Defendants Because They Acted Outside The Scope Of Their Employment When They Defamed Dr. Alessa.

The Defendants assert that Dr. Alessa did not name the proper defendant to her tort law defamation claims because they were acting within the scope of employment and are therefore immune from suit under the FTCA. Defendants' assertion is without merit. Defendants Boone and Westfall cannot properly maintain that they were acting within the scope of their employment as a Portfolio Manager and Deputy Director of NMIO, respectively, when they published to third parties, external to the present organization for which the parties worked, that Dr. Alessa was engaged in an extra-marital affair with Mr. Sean Moon. Compl. ¶¶ 260, 273. Defendants also wrongly assert that when Westfall published to third parties external to NMIO false statements about Dr. Alessa in her professional capacity (i.e., that she was fired for cause, had her security clearance revoked, exaggerated her credentials, and that she was an insider threat), he was acting within the scope of his role as Deputy Director of NMIO. Compl. ¶ 275.

As discussed *supra*, the Court should look to the law of the jurisdiction in which the conduct occurred for the *respondeat superior* rules to apply to rightfully assign liability of such wrongful conduct. *See Johnson v. Carter*, 983 F.2d at 1322; Stewart, 2014 WL 1032017, *2. With respect to Defendants' defamation acts, such acts were not conducted within the scope of NMIO employment as making extra-marital affairs comments to other people is not the kind of conduct

6

or part of the responsibilities which Defendants were employed to perform. Such comments were also not made in order to serve the Government employer. Because the Defense fails to meet even one prong when attempting to prove its conduct was within the scope of employment, its position is disproved. See generally Restatement (Second) of Agency (1957) § 228. Regardless, the remaining scope of employment elements are further explored.

Additionally, the Court need not accept the conclusion that the Defendants were communicating their disparaging statements about Dr. Alessa substantially during work hours and within the bounds of NMIO property and locations to other NMIO employees. To the extent, as alleged by Plaintiff, such conduct occurred outside of NMIO hours, NMIO offices, and to non-NMIO third parties, then the Defense also fails the scope of employment time and space prongs. See generally Restatement (Second) of Agency § 228 (1957). It is known that Defendants made such disparaging declarations to senior Navy officials and/or the Inspector General and others in the larger intelligence community. Compl. ¶¶ 122, 127, 259, 272. Thus, such comments were not contained to the NMIO program community, which would be most concerned with the sanctity of its own policies.

It is also known that Defendant Westfall made disparaging comments about Dr. Alessa's professional credentials and stature to non-NMIO program employees including legislative staff members, U.S. Coast Guard intelligence staff, at least one member of the Canadian Defense Forces, at least one member from the National Security Agency staff, among others. Compl. ¶¶ 127, 139, 276. Even if Defendant Westfall had legitimate reason to concern himself and select other NMIO employees with Dr. Alessa's professional credentials and status in the NMIO program, he cannot assert that there was legitimate reason to publish such concerns to non-NMIO third-parties. Non-NMIO third-parties have no bearing on or concern with the NMIO program

objectives, duties, or mission. Sharing disparaging information with these individuals takes the defamatory comments out of the NMIO 'space,' offending the time and space requirements for an employee alleging to act within the scope of employment.

Not only are concerns regarding extra-marital affairs implicitly excluded from the NMIO program objectives and the Portfolio Manager and Deputy Director roles—because such concerns are personal and non-professional in nature—but such concerns would not be of professional consequence to Dr. Alessa even if true. Defendants incorrectly assert and assume that a perceived extra-marital affair with Mr. Moon is against agency policy—it is not. Compl. ¶ 274. So, even if Defendants intend on asserting that their surveillance over matters contravening agency policies, to include concerns surrounding employee relations, is within the responsibilities an employee is expected to perform, this assertion is defunct because there is no such policy. For employee conduct to be within the scope of employment, "the acts must have been in furtherance of the employer's business and authorized by the employer." *Barclay v. Briscoe*, 427 Md. 270, 283 (2012) (*quoting S. Mgmt. Corp. v. Taha*, 378 Md. 461, 481(2003)). Making such comments to other individuals, or even attempting to track employee relations of the nature asserted here, is not conduct that gainfully serves the Government.

These defamation comments are not a "direct outgrowth" of the employee's job assignment, nor are they foreseeable or motivated by a desire to serve the employer's interests to run a successful and efficient program. *Harbury v. Hayden*, 444 F. Supp. 2d 19, 33 (D.D.C. 2006); *Felland Ltd. Partnership*, 384 Md. at 533 (*citing Cox v. Prince George's County*, 296 Md. 162, 171 (1983), stating "In addition, an important factor is whether the employee's conduct was 'expectable' or 'foreseeable'")). Defendants are not part of the human resources department—they are employed to ensure NMIO programmatic success. What Dr. Alessa does with her time,

personally, romantically, or otherwise, outside of NMIO work, is of no consequence to the Government.

Furthermore, in looking at whether Mr. Boone and CAPT Westfall's materially false statements were within the scope of their employment, it is imperative to understand the timing, nature, and scope of when the statements were made. Dr. Alessa's IPA with the Navy was terminated effective May 15, 2019. Compl. ¶ 115. The majority of the defamatory statements made by Mr. Boone and CAPT Westfall were made after her termination, beginning in June and stretching into the fall, as late as November 2019. *Id.* ¶ 139. The defamatory statements have been repeated to contractors and to persons in federal law enforcement. *See*, Exhibit 1. They were repeated well *after* Dr. Alessa left federal employment.[5]

In one of the more egregious instances, CAPT Westfall made unsolicited false statements at a National Intelligence Manager ("**NIM**") meeting to personnel from other federal agencies outside the Navy. Importantly, neither Dr. Alessa, nor the BDAADS program were on the agenda for the meeting, and no one asked CAPT Westfall for information regarding Dr. Alessa. Rather, he falsely told the participants, with knowledge that his statements were materially false—that Dr. Alessa had been terminated for cause, that her security clearance was revoked and that she had misrepresented her qualifications and credentials. His statements were directed to Mr. Michael Potts and Mr. Christopher Demi from the United States Coast Guard Intelligence division (CG-2); Brian Murphy, Department of Homeland Security Office of Intelligence and Analysis (DHS I&A);

---

[5] As noted, the persons making the defamatory statements did not report the conduct as part of any government-sponsored investigation. Perhaps, in a post-hoc attempt to try to establish a legitimate basis for such statement, investigators for the Department of Homeland Security, questioned Sean Moon, the alleged paramour of Dr. Alessa, nearly a year after the statements were made. The investigation is clearly troubling and retaliatory and suggests possible intimidation of a potential witness. One hopes that no federal attorney or the actors of the Department of the Navy were involved in or green-lighted such misuse of federal authority.

Michael Schimoff, Office of the Director of National Intelligence, National Intelligence Manager, Transnational Crime, Homeland, & Western Hemisphere (ODNI NIM-THW), Nicole Wells (ODNI NIM-THW, now with the National Counter Terrorism Center, NCTC), and Richard Koppel (NIM THW/ODNI and I&A/DHS). Compl. ¶ 127. None of these individuals were investigators or supervisors of Dr. Alessa, and thus the disclosures were not designed to advance a government interest, but, solely to discredit Dr. Alessa. The tactic of accusing a woman of adultery, to explain support that she received from others for her claims, and the threat to her reputation through aspersions on her sexual conduct, is an all-too-familiar attack that has no place in federal employment. Indeed, the conduct forms the separate claim of illegal discrimination and retaliation. As such, it is hard to conceptualize the issue as involving something within the scope of employment.

It is not foreseeable that a supervisor with the Navy, such as CAPT Westfall would be discussing the status of, or basis for an employee termination outside his own Agency or accusing that employee of being an adulterer or security risk. More importantly, discussing the status of or basis for an employee termination is in complete contravention of the "type of conduct [CAPT Westfall] was employed to perform." *Smith v. Clinton*, 253 F.Supp.3d 222, 235 (D.D.C. 2017), citing *Ballenger*. In fact, upon information and belief, offering unsolicited false statements regarding a terminated employee to other agencies is a violation of the Navy's personnel regulations. Rather a supervisor would not be expected to discuss the status of a terminated employee at all, and certainly not unsolicited.

The clear import of the actions of both Mr. Boone and CAPT Westfall is that they were self-interested. They were concerned, not about the Navy's interests, but rather about saving their own interests to prevent potential discipline from the Navy. This undercuts the Defendants'

argument that Mr. Boone and CAPT Westfall's "motivation had at least some motivation to serve the employer." In no way does making false allegations about a terminated employee serve the interests of the employer. Rather Mr. Boone's and CAPT Westfall's false statements were made in their own self-interest in an ill-advised attempt to shield themselves and justify their own actions, all while preventing Dr. Alessa from obtaining a new sponsoring agency for her funded program.

Notwithstanding, CAPT Westfall continued to make false statements to other agencies and partners within the intelligence community through the fall, and as late as November 2019. CAPT Westfall made similar false statements to representatives of the Port of Long Beach, as well as representatives of the Canadian Department of National Defence ("**Canada DND**"). His statements to the Canada DND were made during meetings held in both Australia and Canada and again, upon information and belief, were unsolicited by the other participants. It is difficult to foresee how an employee who was terminated six months prior would come up on a meeting agenda with foreign intelligence agencies. The Navy cannot reasonably assert that CAPT Westfall making unsolicited false statements to foreign intelligence agencies six months after Dr. Alessa's termination is the "'kind of conduct an agency employee is employed to perform."

Accordingly, the Plaintiff has sufficiently rebutted the government's scope certification with the above allegations as well as those in her Complaint, and the government has failed to meet the four-factor test from the Restatement (Second) of Agency. Therefore, the Court should deny the governments' Westfall certification and should deny substitution of the United States for the individual defendants.

### ii. Defendants Boone And Westfall *Are* The Proper Defendants Because A Westfall Act Certification Does Not Result In A Foregone Scope Of Work Conclusion, Nor Does It Necessitate FTCA Recourse Only.

As a reaction to Defendants Boone and Westfall being sued in their individual capacity, the United States Attorney's Office for the District of Columbia issued a certification statement that these individuals were acting within the scope of their employment with the U.S. Government at the time of the tortious conduct. See Exh. 1 to Def. Mot. to Dismiss (Dkt. #33-1). Defendants now assert that, because they have secured a certifying statement making such determinations, the fact that they were acting within the scope of NMIO employment is a foregone conclusion, and thus, the only recourse is to bring FTCA action against the United States. This restatement of law is wholly incorrect and misstates the currently followed precedent in this jurisdiction.

The Defense relies on *Jamison v. Wiley* to make the conclusion that a certification equates to a foregone conclusion regarding the scope of employment question of law. *Jamison*, 14 F.3d 222, 227 (4th Cir. 1994). However, it ignores other relevant and binding authority which explores the effect of a certification in more granular fashion. The potential effects of the certification are to: require the Attorney General to remove the lawsuit to the local federal court; require the substitution of the United States for the federal employee as the defendant in the lawsuit; and convert the lawsuit into an action against the United States under the Federal Tort Claims Act. 28 U.S.C. § 2679(d)(2). *See Haddon*, 58 F.3.d at 1423. Although the Westfall Act makes Attorney General certification conclusive for purposes of removal, the Supreme Court has also held that it is not conclusive regarding substitution of the federal government as the target defendant. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 444 (1995). Instead, the federal court may determine, independently, whether the employee acted within the scope of employment and, therefore, whether to substitute the federal government as the proper defendant. *Id.* at 434-35. Under *Lamagno*, Dr. Alessa is within her rights as a defamation plaintiff to bring suit against the

12

individual Defendants Boone and Westfall, who committed defamatory acts outside the scope of employment. The Court must consider all relevant facts, not only the Westfall Act certification disclaiming the employees' individual actions, because liability assignment to the Government employer is not a foregone conclusion.

Because Dr. Alessa challenges the certification and there is an issue of material fact, per *Stewart*, the plaintiff may request limited discovery or an evidentiary hearing, which the district court may grant in its discretion. *See Stewart*, 2014 WL 1032017, *3-4 (*citing See Gutierrez de Martinez*, 111 F.3d at 1155). The material questions of fact Dr. Alessa purports exists are how the defamatory statements made to third parties encompass job responsibilities or duties the Defendants were employed for, how such statements serve the interests of the employer, and the exact time and place when the comments and statements were made. These facts go to the crux of the scope of employment claim elements and are material to the Plaintiff's case.

### iii. FTCA Waiver of Immunity is a Non-Issue Because the Government is Not the Proper Defendant and This is Not an FTCA Claim.

Because Dr. Alessa does not agree that only the U.S. Government may be sued in light of the facts presented and the tortious conduct by two NMIO employees, Dr. Alessa does not agree that her defamation claim is excluded from the FTCA's waiver of immunity. Such a waiver of immunity assumes that the Government is the defendant in the first instance and that the employees were acting within the scope of employment, which, as discussed *supra*, is not the case here. When certification is challenged, as it is here, the burden shifts to the plaintiff to prove, by preponderance of the evidence, that the defendant employee was acting outside the scope of employment. *Khatami v. Compton*, 844 F. Supp. 2d 654, 659 (D. Md. 2012) (*citing Gutierrez de Martinez*, 111 F.3d at 1153); *see also Maron v. United States*, 126 F.3d 317, 322-23 (4th Cir.1997) (citing 28 U.S.C. § 2679(d)(1). "Moreover, the plaintiff's submission must be specific evidence or the forecast of

specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." *Gutierrez de Martinez*, 111 F.3d at 1155.

Above, Dr. Alessa has provided specific allegations and evidence of the Defendants' conduct acting outside the scope of employment when the Defendants shared with named non-NMIO employees untrue statements defaming Dr. Alessa and not in support of NMIO program objectives. Because names and content of the untrue statements were provided with specificity, these allegations are not merely conclusory. This type of conduct is more likely than not a true and accurate representation of the kind of conduct Dr. Alessa was subjected to as further evidenced by the September 8, 2019 letter to Mr. Levitz by Mr. Nelson, General Counsel of the University of Idaho, requesting that Mr. Levitz inform the NMIO Director of the damage being caused to Dr. Alessa's reputation and working relationships. In this letter, Mr. Nelson requests corrective action and to cease the spread of misinformation. Ex. 3 to Compl. Thus, the veracity of Dr. Alessa's complaints is recognized by at least one other person as being true and these statements as having a negative impact on her employment prospects and environment.

Notwithstanding, to the extent the Court is inclined to substitute the government defendant for the individual defendants, then Plaintiff should be permitted an opportunity to timely bring her tort claims directly to the Agency pursuant to 28 U.S.C. § 2679(d)(5).

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that this honorable Court deny Defendants' Motion to Dismiss the Defamation Claims, and such other and further relief the Court deems appropriate.

Dated: October 13, 2021                    Respectfully submitted,

                                           **DR. LILLIAN ALESSA**
                                           By and through counsel

                                            */s/ Kevin E. Byrnes*
                                           Kevin E. Byrnes (*pro hac vice*)
                                           Samuel M. Adelmann (*pro hac vice*)
                                           **FH+H**
                                           1751 Pinnacle Drive, Suite 1000
                                           Tysons, VA 22102
                                           T: (703) 590-1234
                                           F: (703) 590-0366
                                           kbyrnes@fhhfirm.com
                                           sadelmann@fhhfirm.com
                                           e-file@fhhfirm.com
                                           *Counsel for Plaintiff*

                                           Geoffrey T. Hervey, Esq.
                                           BBS&G
                                           7315 Wisconsin Avenue, Suite 800
                                           West Bethesda, Maryland 20814
                                           T: (301) 656-2707
                                           F: (301) 961-6525
                                           ghervey@bregmanlaw.com

                                           *Local Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on October 3, 2021, I served the foregoing through the CM/ECF system and by electronic mail to the following:

Jonathan F. Lenzner
Acting United States Attorney

Kelly M. Marzullo, Esq.
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, MD 21201
Ph: 410-209-4956
Fax: 410-962-2310
Kelly.Marzullo@usdoj.gov
*Counsel for Defendants*

                                            */s/ Kevin E. Byrnes*
                                           Kevin E. Byrnes, Esq.